UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as trustee for MORGAN STANLEY HOME EQUITY LOAN TRUST 2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1,<br><br>Plaintiff,<br><br>v.<br><br>JUAN VARGAS and MORTGAGE ELECTRONIC REGISTRATION SYSTEM INC., as a nominee for FREEMONT INVESTMENT & LOAN,<br><br>Defendants. | No. 12 CV 4819<br><br>Judge Manish S. Shah |

## ORDER

Plaintiff's motion for summary judgment [41] is granted. Plaintiff's motion to appoint a Special Commissioner [45] is granted. The status hearing scheduled for 12/5/14 at 9:30 a.m. is hereby stricken and no appearance is necessary. Plaintiff shall submit a proposed judgment of foreclosure to the court's proposed order email address by 12/8/14.

## STATEMENT

Plaintiff Deutsche Bank National Trust Company moves for summary judgment in this mortgage foreclosure action. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the

nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

On September 25, 2006, Fremont Investment & Loan lent defendant Juan Vargas $209,200. [42] ¶ 6. In exchange for these funds, Vargas executed a note and mortgage in favor of Fremont, thereby securing the loan with the property commonly known as 5015 Suffield Ct., Skokie, Illinois 60077. *Id.* ¶¶ 7, 11. Fremont recorded the mortgage with the Cook County Recorder of Deeds on September 28, 2006. *Id.* ¶ 10. On October 19, 2011, defendant Mortgage Electronic Registration System, as nominee for Fremont, assigned the mortgage to plaintiff. *Id.* ¶ 17. This assignment was recorded with the Cook County Recorder of Deeds on November 7, 2011. *Id.* ¶ 18. At an undisclosed point in time, Doug Pollock, Fremont's Assistant Vice President, endorsed the note in question, but did so without identifying an endorsee. [42-2] at 5.

Vargas's note required him to pay yearly interest of 6.85%, taxes, insurance, other escrow expenses, and to make monthly payments beginning on November 1, 2006. [42] ¶¶ 8-9, 14. Vargas missed his June 2011 payment, so on July 6, 2011, he was sent a grace period notice as required by 735 ILCS 5/15-1502.5. [42] ¶ 15; [42-4] at 4. On August 5, 2011, Vargas was mailed a demand letter consistent with the terms of the mortgage agreement. [42] ¶ 16. Vargas failed to cure the default and as of May 27, 2014, the loan carried a principal balance of $197,958.49, with interest accruing at a rate of $37.667102 per day. *Id.* ¶ 20; [42-4] at 51. The loan also carried balances for attorneys' fees, foreclosure costs, late charges, advances, and other expenses incurred by plaintiff as a result of the default, which, with the principal, all together totaled $256,340.03. [42] ¶ 21. As of September 26, 2014, Vargas was not on active duty in the United States Military. *Id.* ¶ 23.

Plaintiff[1] filed suit to foreclose on Vargas's mortgage [1] and now moves for summary judgment [41].[2] Under Illinois law, a mortgagee may foreclose its interest in real property upon "either the debt's maturity or a default of a condition in the instrument." *Heritage Pullman Bank v. American National Bank & Trust*, 164 Ill.App.3d 680, 685 (1st Dist. 1988). A mortgagee establishes a prima facie case for foreclosure with the introduction of the mortgage and note. *See Farm Credit Bank of St. Louis v. Biethman*, 262 Ill.App.3d 614, 622 (5th Dist. 1994).

---

[1] Plaintiff brings this action in its capacity as trustee for Morgan Stanley Home Equity Loan Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1.

[2] Jurisdiction arises on the basis of diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff is a national association chartered under the laws of New York, where it is headquartered. [42] ¶ 2. Vargas is a citizen of Illinois. *Id.* ¶ 3. MERS is incorporated under California law, where it is headquartered. *Id.* ¶ 4. Substantive Illinois law and procedural federal law apply to this diversity action. *Gacek v. American Airlines Inc.*, 614 F.3d 298, 301-02 (7th Cir. 2010).

Plaintiff has presented undisputed evidence that Vargas is in default of a condition of the mortgage agreement and note: Vargas had a mortgage, the mortgage secured the note, the note required monthly payments, Vargas missed the June 2011 payment, he was provided a grace period notice, he was provided a demand letter, and, finally, he failed to cure the default.

Vargas argues that summary judgment should be denied because the supporting affidavit of Mary Maguire is not based on personal knowledge and thus fails to lay a foundation sufficient to admit the attached loan account records under Federal Rule of Evidence 803(6) ("Records of a Regularly Conducted Activity"). [48] at 2-6. As an initial matter, Vargas did not file a response to plaintiff's statement of facts, so under Local Rule 56.1, "[a]ll material facts set forth in [plaintiff's] statement . . . will be deemed to be admitted . . . ." NDIL LR 56.1. Plaintiff's motion is properly granted on this basis alone.

In addition to this procedural error, Vargas's argument, taken on the merits, fails to demonstrate a genuine issue of material fact that should preclude summary judgment. Vargas supports his argument by noting that (1) Maguire does not maintain the relevant data herself, (2) she cannot say who inputs the data, (3) she failed to elaborate on what her job functions were, (4) she lacks personal knowledge of the sending of the demand letter and grace period notice, (5) her claims to the accuracy and procedure of Real Servicing—the servicer's software that tracks loan payments—are conclusory and unsubstantiated, (6) she fails to say who recognizes Real Servicing as an industry standard, and (7) she does not attest to the reliability of this software. [48] at 2-6.

As to the first two points, Maguire was not obligated to personally input the data or to provide detailed information about the specific people that did. Instead, it sufficed for her to swear that she has personal knowledge that the records in question were made "at or near the time by—or from information transmitted by—someone with knowledge," which she does. *See* FRE 803(6); [42-4] at 1-2.

On the third point, Maguire laid a sufficient foundation as to her duties and responsibilities when she stated that ([42-4] at 1):

> In the ordinary course of my employment as a Contract Management Coordinator, my responsibilities include reviewing and analyzing the business and loan records for loans that [the] [s]ervicer services . . . containing among other things, a loan payment history, and computer generated records. I have access to said records as a function of my employment. I have reviewed and am familiar with the business records of [Vargas's loan] in connection with executing this affidavit . . . .

Finally, with regard to Vargas's remaining points, Maguire's entire affidavit was based on her personal knowledge, including that the demand letter and grace period notice were sent to Vargas, Real Servicing was properly operated to accurately record Vargas's mortgage payments, and that it was the servicer's regular practice to accurately record mortgage payments at the time they were received. *Id.* at 1-4.

It is certainly true that Maguire's affidavit is not as detailed as a deposition transcript. Nor does it explore potential inconsistencies, such as the fact that Maguire swears to have personal knowledge about the recording of Vargas's payment history before her company began servicing the loan. *See* [42-4] at 2. Nevertheless, these flaws are not fatal because Vargas—having apparently opted not to conduct discovery—offers nothing to contradict them. At the end of the day, Maguire offers sufficient particularity about the nature of the records, her role in accessing and understanding the records, and the regularity with which the records are maintained. Her testimony is undisputed, and the records are admissible.[3]

Plaintiff's motion for summary judgment is granted. The court previously entered an order of default against defendant MERS. [47]. With this order, the claims against all defendants are resolved. The plaintiff's motion to appoint a Special Commissioner [45] is granted.

ENTER:

Date:   12/3/14

                                                    Manish S. Shah
                                                   U.S. District Judge

---

[3] Although Vargas identified four affirmative defenses in his Answer, [16] at 12-14, he failed to argue them in his response brief and therefore waives them. Furthermore, even if he had not waived the defenses, he presents no evidence—whether his own or plaintiff's—and thus cannot carry his burden.

4